## LACARA v. WEST MONROE GIN CO., Inc.
### No. 5665.

Court of Appeal of Louisiana. Second Circuit.

April 29, 1938.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellant.

W. Decker Moore, of Monroe, for appellee.

HAMITER, Judge.

On the afternoon of October 14, 1936, a truck belonging to a baking establishment was parked in front of the Carey Holmes Store in the City of West Monroe, Louisiana, headed in a westerly direction and located approximately six feet from the paved street. While plaintiff was standing at its rear, removing bread and cakes therefrom for delivery to the store, a trailer became disengaged from a truck which was traveling west on said street, swerved across and off the pavement and crashed into him. He received serious injuries.

The truck, to which the trailer had been attached, belonged to and was operated by one O. B. Slade, a resident of Union Parish, Louisiana, and was moving at the time at a speed of from 12 to 15 miles per hour. The trailer was one of a fleet of five which the West Monroe Gin Company, Inc., owned, and lent to the various farmers in the surrounding territory, for the purpose of stimulating and in aid of its ginning business. It may be described as a homemade vehicle having four wheels and being without brakes. However, the rigging used for attaching it to the towing machine was of factory make.

Mr. Slade borrowed the trailer from its owner about three days prior to the date of the accident. On the morning of that date, he brought cotton on it from Union Parish to the West Monroe Gin Company, Inc., detached the trailer and left it there, and went to the City of Monroe. He returned to the gin that afternoon, attached the trailer to his truck, and began the journey to his home with the intention of bringing additional cotton to the gin. He had traveled a distance of approximately six blocks, all of which was on pavement, when the accident occurred.

Plaintiff's suit to recover damages for his injuries is directed solely against the owner of the trailer. Slade, the owner and operator of the truck that pulled the offending vehicle and who connected the two shortly before the unfortunate occurrence, is not made a party defendant. The alleged liability of the West Monroe Gin Company, Inc., is grounded on the theory that it lent to Slade a trailer which it knew possessed improper and defective hitching equipment, and that the disengagement of the trailer from the truck with the resultant accident and injuries to plaintiff was due to such deficiency and defect.

Defendant denies liability, and affirmatively and specially avers that the equipment furnished to Slade was in good condition, safe and in no manner defective.

The demands of plaintiff were rejected and his suit dismissed, after a trial of the case, and he appealed.

The record discloses that the hitching equipment complained of is of the ball and socket type. Affixed to the pulling machine is what is known as a hitch in which the ball is fastened. Attached to the tongue of the trailer is the coupler which is in two parts, upper and lower. The upper portion carries all of the weight and pull and has on its front end the socket which possesses a lip extending considerably below the center line of the ball when connected. The lower portion consists of a V-shaped yoke which partially surrounds the neck of the ball when in proper place; a one-half inch bolt, with a square head recessed in the yoke, that passes through a slot in the upper part of the coupling; and a lever nut, with a ratchet on its lower end, which engages the bolt. A spring latch attached to the socket or upper piece, and made of phosphor bronze material, contacts the ratchet nut and serves to prevent its loosening when in position.

To connect the trailer with a truck, the ball is inserted in the socket, the yoke is slid up to and around the neck of the ball, and the lever nut is then turned so as to draw such yoke and socket toward each other and securely and firmly fasten the ball between them. The spring latch or lock is then inserted in the ratchet on the lever nut. In order to disengage the two vehicles after a connection has been properly made, the spring must first be released from the ratchet and thereafter about six complete revolutions of the lever nut are required.

It is the testimony of the witnesses for plaintiff that when the trailer was fastened to the truck at the gin, the lever nut was tightened as much as possible and the latch was put into place; that a test of the coupling showed it to be secure; and that after the occurrence of the accident the spring latch was found to be bent back.

Counsel for plaintiff complain solely of this latch, for they state in their brief as follows: "It is appellant's theory of the case that it is this latch which gave way, causing the trailer to become disengaged and we submit that despite the generalities of the opinion testimony of various experts called by the appellee, an examination of this little copper latch by the court will furnish conviction as to the insufficiency and defective character of the equipment furnished by the appellee. A little copper or bronze composition latch, somewhat rectangular in shape, and measuring approximately an inch and one-half by one-half inch, is and was the only device forming a part of the trailer connection which could hold the bolt joining the ball and socket connection in its proper place. This fact, we say, is self-evident, and we believe that the thing speaks for itself, and that inspection of this hitch, which snapped loose or gave way under the strain placed upon it, is demonstrative of the unsafe character of the equipment which the appellee furnished and which was being used in the furtherance of the appellee's business at the time of the accident."

Our study of the evidence is convincing that the spring latch had nothing to do with the trailer's becoming disengaged from the truck. As before stated, the only purpose that it serves in the coupling unit is to lock the lever nut after the required tightening has been performed, and no strain whatever is placed thereon while pulling operations are in progress. According to the proof in the record, when the ball is securely fastened between the yoke and the socket and there is no employment of the spring latch, a long distance can be traveled before the lever nut will loosen and turn sufficiently to permit the extrication of the ball. In fact, for a considerable period of time after the accident, the trailer in question, together with the identical coupling unit, was used by a Mr. T. C. Rowland, in the hauling of his farm products. His cotton was transported in it from his farm to defendant's gin, a distance of approximately eleven miles, and in none of his trips did he insert the spring latch in the ratchet and no accidental disengagement of the trailer was ever experienced.

In the instant case, the truck and trailer had traveled a distance of approximately six blocks, or 1,800 feet, after the coupling was sought to be made by Slade, and all of this on pavement. Only one curve or turn was negotiated on the trip. Under these circumstances, and by reason of the above recited findings, it appears to us that a loosening of the lever nut sufficient to permit a disengagement at the time and place in question would have been impossible if a proper coupling had been effected. This view is entertained by the experts who testified at the trial.

Our conclusion agrees with that of the trial judge, and is that the proof shows no defectiveness of the trailer equipment, and consequently no liability on the part of its owner.

The judgment is affirmed.