**PRUETT   v.   MABRY et ux.**

No. 4956.

Court of Civil Appeals of Texas.

Beaumont.

May 13, 1954.

Rehearing Denied June 2, 1954.

Blakeley & Williams, Houston, Cam Harrell, Conroe, Blakeley & Blakeley, Dallas, for appellant.

Williams & Jeter, Houston, J. Robert Liles, Conroe, for appellees.

ANDERSON, Justice.

The parties will be referred to as in the trial court; the appellees, G. C. Mabry and his wife, Alice, as plaintiffs; the appellant, D. P. Pruett, as defendant.

The plaintiffs sued to recover damages for personal injuries sustained by them, and for damage done their automobile, when on January 10, 1952, their automobile, in which they were riding, was struck by a trailer which became detached from a truck that was being driven by the defendant.

The defendant owned both the truck and the trailer.

Trial was to the court without a jury, and resulted in a judgment in favor of plaintiff G. C. Mabry for the sum of twelve thousand dollars. Of this amount, $5,500 was awarded because of the personal injuries to G. C. Mabry; $5,000 was awarded because of the personal injuries to Mrs. Mabry; and $1,500 was awarded because of damage to plaintiffs' automobile.

The collision occurred about 3:30 p. m., on Highway 75, just south of the southern limit of the city of Conroe, in Montgomery County. The defendant was traveling northward; the plaintiffs, in the opposite direction. The trailer became either wholly or partially detached from the defendant's truck, and swerved in front of the plaintiffs' automobile. There is no suggestion in the evidence that the collision would have occurred if this had not happened. Both the defendant's truck and the plaintiffs' automobile appear to have been on their proper sides of the highway as they approached and met each other. The defendant testified that he was driving at the rate of approximately 20 miles per hour; and the plaintiffs testified that they too were traveling at approximately that speed. The weather was clear, and the highway was straight and dry. Except for a slight incline a short distance south of where the collision occurred, the highway was also level. The defendant himself had coupled the trailer to the truck earlier in the day. He had carried a trailer load of scrap iron to Houston, and was returning to his home in Madisonville when the collision occurred. The trailer was empty on the return trip.

The trailer appears to have been of the type that has only one axle, and the coupling device or trailer-hitch by which it was attached to the truck appears to have been of a general type that is commonly used in coupling that kind of trailer to another vehicle. A piece of flat steel with a hole in it extended outward horizontally from the rear bumper of the truck, and pieces of

flat steel with holes in them which were in line with each other extended horizontally from the top and bottom sides of the outward end of the tongue of the trailer. A coupling was effected by inserting the former piece of steel between the latter two, aligning the three holes, and passing a bolt through them, and by connecting a safety chain between the two vehicles. The safety chain, one end of which was welded to the trailer, was designed to be fastened to the truck by being wrapped around the truck's rear bumper, and hooked with a hug-hook.

The three pieces of steel through which the bolt passed were not designed to fit together snugly. They allowed for some three or four inches of vertical play by the end of the tongue of the trailer, and it appears that when the trailer was being pulled, particularly if it was empty, the end of its tongue was rising and falling almost constantly. This see-saw motion seems to have been recognized by the defendant as a threat to dislodgment of the bolt unless the latter were secured in place by a nut or by something else that would keep it from being extracted from the holes.

The defendant alone testified as to the agency or agencies employed by him on the day of the collision to keep the bolt from being dislodged. His first testimony on the point would indicate that he had placed a washer and one nut on the lower end of the bolt. Later, after it had been developed that the bolt had no hole in it for a cotter pin, he testified that he had employed a washer and two nuts, one nut to act as a lock for the other. The bolt was threaded for only an inch or an inch and a half of its length; and since it was long enough that its threaded end hung some four or five inches below the lowest of the three plates it held together, the washer and nut or nuts could not be tightened against the bottom plate.

The defendant testified that after unloading the trailer in Houston, he inspected the trailer-hitch, and noticed no defect in it. Upon being questioned about the nature of the inspection he made, he said he "just glanced at it." He said he saw the nuts on the bolt at that time; but upon being asked if the nuts were on tight he said, "I suppose so, I didn't put a wrench on them." He said they appeared to be tight. He did not again inspect the coupling before the collision occurred.

The bolt became dislodged from the holes in the three plates it held together, and was found in the highway, some four or five hundred feet south of where the collision occurred. Neither a nut nor a washer was found. The safety chain was broken loose from the trailer at the weld, and was also dislodged from the bumper of the truck. It appears to have been found in the highway somewhere near the scene of the collision. Whether it was pulled loose from the trailer and dislodged before or at the time of the impact is not disclosed.

The defendant had been using the trailer for approximately two years, but he testified that the bolt which was used to complete the coupling on the day of the collision had not been in use that long. He did not testify as to how long the bolt had been in use, but admitted that the threads on it were somewhat worn. Three other witnesses, J. T. Groce, Ernie Harvell, and Sewell Smith, testified to the worn condition of the threads on the bolt which was found in the highway after the collision occurred. Two of them, Harvell and Smith, testified that the defendant identified the bolt as his, and both expressed the opinion that the threads were too worn to hold a nut. These witnesses testified that they examined the bolt within a few minutes after the collision occurred. The witness Harvell, who testified that he had been a machinist for some twenty years, testified that the bolt "had practically no threads on it"; that "the threads had been worn off"; that "there was a place about two inches on the bolt up near the head worn up and down, freshly worn"; and that in his opinion the threads were not sufficient to "carry a nut". The witness Smith testified that the bolt looked as if it had been used for years; that it was "worn thin in the middle where the hitch had been running up and down on it"; and that it had no threads

on it, "in the sense that they could be used." He said there had been threads on the bolt, but that "they were worn off and could not be used."

Highway 75, on which the collision occurred, was a heavily traveled highway; and at the time of the collision the plaintiffs' automobile appears to have been both closely preceded and followed by other automobiles. The plaintiffs made no mention of having seen the trailer until it collided with their car.

The plaintiffs alleged in their petition that the defendant was guilty of negligence (1) in operating his truck at a rate of speed in excess of that at which a person of ordinary prudence in the exercise of ordinary care would have operated the same under the same or similar circumstances, (2) in failing to maintain a proper lookout, (3) in failing to maintain proper control of his truck, (3a) in failing to maintain proper control of the trailer or semi-trailer, (4) in failing to make proper application of the brakes on the truck, (5) in failing to keep the trailer or semi-trailer upon its right hand side of the road, (6) in permitting the trailer or semi-trailer to cross upon plaintiffs' side of the highway, (7) in driving and operating the truck at a rate of speed in excess of 45 miles per hour immediately prior to the time of the collision, such rate of speed being in excess of the lawful speed for a truck of its kind, (8) in not properly connecting the truck and trailer or semi-trailer, (9) in using a dangerous coupling device between the trailer or semi-trailer and the truck, (10) and in not properly inspecting the coupling device before the time in question.

Pursuant to a request by the defendant, the trial court filed findings of fact and conclusions of law. The fact findings which bear on the question of defendant's liability, in so far as they are material on this appeal, were as follows:

"The defendant was driving and operating his truck and trailer negligently in the particulars as pled by plaintiffs.

These acts of negligence were proximate causes of the collision and damages suffered by plaintiffs."

The appellant has brought forward seventeen points of alleged error. The first fifteen of these attack the trial court's findings of fact as being either without any support or else without sufficient support in the evidence, or as being contrary to the overwhelming weight of the evidence. The first fourteen are directed at the fact findings which pertain to liability; they treat each allegation of negligence and proximate cause in the plaintiffs' petition as a separate finding, found favorably to the plaintiffs. The fifteenth is directed at the finding that as a result of her personal injuries Mrs. Mabry was damaged to the extent of $5,000. Point sixteen complains that for the personal injuries suffered by Mrs. Mabry the award of $5,000 was excessive. Point seventeen complains that the trial court erred in admitting into evidence over the defendant's objection and in refusing to strike testimony of plaintiff G. C. Mabry to the effect that immediately after the collision some unidentified person or persons told him his (Mabry's) leg was broken.

■ Appellant's seventeenth point does not present reversible error, and is overruled. If any error was committed by admitting into evidence the testimony complained of, the error was harmless. Other undisputed evidence, including the testimony of a doctor, established unequivocally that plaintiff G. C. Mabry sustained a broken leg in the collision. The latter's testimony to the effect that a bystander informed him of that fact at the scene of the collision could have worked no prejudice to the defendant.

When each allegation of negligence and proximate cause in the plaintiff's petition is treated as a separate fact-finding, found favorably to the plaintiffs, some of the trial court's findings of fact are without support in the evidence. Several of appellant's first fourteen points are therefore well taken and are entitled to be sustained.

We feel, however, that no good purpose would be served by specifying and discussing these points, because we are of the opinion that the findings of negligence and proximate cause which we shall presently mention and discuss are supported by sufficient competent evidence; and since alone they are sufficient to support the judgment, in so far as the question of liability is concerned, the unsupported findings become immaterial.

■ We think the evidence is legally sufficient to support the court's findings (8 and 9) that the defendant was guilty of negligence "in not properly connecting the truck and trailer or semi-trailer," and "in using a dangerous coupling device between the trailer or semi-trailer and the truck," and also its findings that these acts of negligence were proximate causes of the collision and of the injuries to the plaintiffs and their property. This conclusion is based upon what the trial court was at liberty to find with reference to the condition of the bolt the defendant used in making the coupling, and with reference to the manner in which the bolt was secured in place, and not upon any showing of inherent vice in the kind, generally, of trailer-hitch the defendant was using.

■ When the evidence is construed in the light most favorable to the findings under discussion—and it must be so construed—we cannot say as a matter of law that it did not warrant a finding that the threads on the bolt were too worn to perform their function of receiving and retaining a nut, and that the defendant knew or in the exercise of ordinary care should have known this, or even a finding that the defendant had knowingly failed altogether to secure the bolt in place. It is an established fact that the bolt was dislodged from the holes in the plates it connected, and this could not have happened if a nut or nuts and a washer had been on it. In the state of the record, the trial court was not required to accept as true either the defendant's uncorroborated testimony that when coupling the trailer to the truck he placed nuts and a washer on the bolt, or his uncorrob-

orated testimony that nuts and a washer were on the bolt after he unloaded the trailer in Houston. All evidence bearing on the point showed the threads of the bolt to have been worn, and there was competent testimony to the effect that they were too worn to accomodate or to retain a nut. There was no indication in the evidence that this condition had resulted from recent stripping; all of the evidence indicated that it had resulted from long use. The trial court may reasonably have concluded, therefore, either that at the time of making the coupling the defendant could not and therefore did not place nuts on the bolt as he claimed to have done, or that if he placed nuts on the bolt he should have foreseen that they would likely be dislodged when the vehicles were put in motion.

■ The appellant argues that the trial court was not at liberty to make the suggested findings because, while being cross-examined, one of the plaintiffs' witnesses, J. T. Groce, expressed the opinion that the threads on the bolt were sufficient to retain a nut; the basis for the argument being that the plaintiffs were bound by this testimony coming from their own witness. The argument is without merit. The rule of evidence on which appellant relies does not forbid a litigant from contradicting one of his witnesses by other witnesses; i. e., from attempting to prove by other witnesses the contrary of what one of his witnesses has previously sworn. Texas Law of Evidence, p. 377, § 290, and the cases there collated. When such a conflict arises between the testimony of witnesses called by the same party, the credibility of the witnesses and the weight to be given their testimony is a question for the trier of the facts, just as in case of other conflicts between the testimony of witnesses.

Not only was the defendant driving on a heavily traveled highway when the collision occurred, but he knew when he attached the trailer to the truck that he was going to make a considerable trip over that and other public highways and the streets of the city of Houston. Clearly, the trial

court was justified in concluding that the defendant should reasonably have foreseen that in those circumstances a collision might likely occur if the trailer should become detached from the truck. The court was also justified in concluding from the evidence that, when the trailer was being towed, the more or less constant see-saw motion of its tongue steadily threatened dislodgment of the bolt if the latter was not in some manner secured in place, and that the defendant was aware or in the exercise of ordinary care should have been aware of this fact. Furthermore, it was a foregone conclusion that if the bolt should become dislodged the main and guiding connecting link between the truck and trailer would no longer exist, because the bolt itself was what made the union. These facts considered, we feel that if the trial court concluded either that the defendant failed to place a nut or nuts and a washer on the bolt, or that he placed nuts and a washer on the bolt but knew or in the exercise of ordinary care should reasonably have known or foreseen that because of the worn condition of the bolt's threads the nuts would likely be jostled off, it was authorized to find both that the defendant did not properly connect the truck and trailer, and that he used a dangerous coupling device between the truck and trailer, and that his conduct in these respects was negligence, and a proximate cause of the collision.

The appellant urges that the reasoning just indulged in involves a pyramiding of inferences, but we do not so construe it. He also urges that even though he was negligent in the respects mentioned, the evidence failed to show that he should reasonably have foreseen the collision as a result of dislodgement of the bolt, and that therefore such negligence was not shown to have been a proximate cause of plaintiffs' injuries and property damage. In support of this contention he argues that even though it be held that he should reasonably have foreseen dislodgement of the bolt, it cannot be said that he should also reasonably have foreseen that the safety chain would break loose from the trailer at the weld. The appellant maintains that breakage of the chain was a new and intervening cause of the collision.

We find ourselves unable to subscribe to this argument. In the first place, the evidence does not render it certain that the chain broke or pulled loose from the trailer before the collision occurred, nor does it warrant our holding as a matter of law that the trial court was not justified in concluding that the defendant should reasonably have foreseen the collision or a similar one without breakage of the chain. It appears that the chain was about as long as the tongue of the trailer, and was welded to either the body or the chassis of the trailer. The chain does not appear to have been at all connected with the trailer's tongue. In its very nature, therefore, the chain was incapable of preventing lateral motion by the two-wheeled vehicle, a fact which it may be said the defendant should reasonably have known or foreseen; and it is to be inferred from the evidence that the chain was long enough to enable such lateral motion to carry the trailer across the center line of the highway and into the path of vehicles traveling in the opposite direction. In the second place, the evidence does not warrant our holding as a matter of law that the trial court was not justified in concluding that the defendant should reasonably have foreseen that the chain would break if the main coupling should become disconnected. The safety chain was not produced at the trial, but another chain with which it was compared was before the court, and the court therefore had some basis on which to form an opinion as to the strength of the safety chain. The defendant estimated the weight of the empty trailer to be seven or eight hundred pounds. We think that in the circumstances the question of whether the defendant should reasonably have foreseen that the weight of the trailer, when suddenly thrown altogether on the chain, would break the chain in its weakest place was one of fact for the trial court to determine.

In support of his contention that the evidence failed to show that the defendant was guilty of negligence, the appellant has cited

the cases of Lacara v. West Monroe Gin Co., Inc., La.App., 181 So. 686; Cormier v. Bodkin 300 Mass. 357, 15 N.E.2d 457; and National Union Fire Ins. Co. v. Wallace, Tex.Civ.App., 118 S.W.2d 609. Each of these cases resulted from a trailer's having become disengaged from its towing vehicle. In each, recovery was denied by the trial court, and on appeal the trial court's judgment was affirmed. The cases, however, on their facts and on the judgments the appellate courts were reviewing, are distinguishable from the case at bar. The Lacara case and the National Union Fire Ins. Co. case were both tried to the court without the intervention of a jury; and the fact that recovery was denied in the trial court is alone sufficient, we think, to distinguish those cases from the case at bar. It is one thing to say that evidence is legally sufficient to support a trial court's findings of negligence and proximate cause, and quite a different thing to say that evidence establishes negligence and proximate cause as a matter of law. The cases are also distinguishable on their facts, but we think it unnecessary to detail these. A verdict was directed for the defendants in the Bodkin case, but a latent defect in the trailer was there involved, and the court held that there was no evidence to show that the defendant caused the break in the angle irons or that he should have known the irons were dangerous.

In effect, appellants' fifteenth and sixteenth points present the same question for review; that of whether, on the evidence, the damages assessed because of Mrs. Mabry's personal injuries ($5,000) are excessive. The evidence bearing on the question was supplied almost exclusively by the testimony of the plaintiffs themselves, and in the main by Mrs. Mabry's own testimony. No medical testimony other than that of a doctor who examined Mrs. Mabry at Conroe very shortly after the latter had been injured was introduced at the trial. This doctor testified that at the time he examined Mrs. Mabry he concluded she had only sustained superficial bruises. Mrs. Mabry testified that she was severely bruised on her arms, shoulders, feet and ankles, and that these bruises were visible for a period of from ten days to two weeks. She also testified that she suffered shock, some strained muscles, and an injury to her neck. Upon two different occasions, once in January, 1952, and again in February, 1953, X-ray pictures were taken of the upper part of her body, but no broken bones were disclosed. No very considerable medical expense was shown to have been incurred as a result of her injuries. Pain and suffering, nervousness, inability to sleep, and the discomfort attending one treatment to which she resorted are the principal elements of damage shown by the evidence. Some seventeen months intervened between the date of the collision and the date of trial, and Mrs. Mabry testified that during all of that period she had constantly suffered rather severe pain at the base of her skull and in her shoulders and the small of her back, had been nervous, and had been unable to sleep with her accustomed soundness. She said she had not been troubled in any of these respects before the collision. She testified that her injuries had seriously impaired her ability to do her house work, but no additional expense was shown to have been incurred on that score. Although she had been previously examined, it does not appear that Mrs. Mabry actually subjected herself to medical treatment until sometime in February, 1953. One of the treatments to which she submitted involved the stretching of her neck. This was accomplished by weights and pulleys, the weights being attached to a harness that she placed around her head and under her chin. It is to be inferred from her testimony that she submitted herself to this contrivance regularly when trying to sleep. Mr. Mabry testified that his wife had regularly complained of pain in her neck and back, and that she had been nervous and had appeared to be sick.

The evidence does not, perhaps, show the nature and extent of Mrs. Mabry's injuries and of her pain and suffering as clearly and explicitly as is commonly true where damages in the amount here involved are awarded, but we are not prepared to say that on the evidence the award

of $5,000 because of her injuries is clearly excessive, or that the learned trial judge abused his discretion in awarding that amount. There are no fixed rules by which a just and fair compensation for pain and suffering can be ascertained. The matter must of necessity rest largely in the sound discretion of those whose primary duty it is to assess the damages, and unless the damages awarded are so clearly excessive as to show an abuse of that discretion or as to indicate passion, prejudice, corruption, or a disregard of the evidence, the trial court's award is binding on the appellate court. We do not feel called upon in this instance to disturb the award, and appellant's fifteenth and sixteenth points are overruled.

The judgment appealed from was rendered and entered by the trial court on June 19, 1953. On July 29, 1953, the appellant filed in this Court of Civil Appeals his application to have the time for filing the transcript and statement of facts in it extended to August 25, 1953. The application was not contested, was deemed by this court at the time to state good cause for the extension, and was granted on the same day it was filed. On August 22, 1953, the appellant filed in this court his application for a second extension of time, this time until September 25, 1953, within which to here file the transcript and statement of facts. This motion likewise was uncontested, was deemed by this court at the time to state good cause for the extension, and was granted in due course on the day it was filed. The transcript and statement of facts were filed in this court on September 24, 1953. On November 16, 1953, the appellees filed herein a pleading which is styled, "Motion attacking jurisdiction of this Honorable Court of Civil Appeals." It moved for dismissal of the appeal on the theory that this court is without jurisdiction because the appellant's motions for extensions of time did not allege good cause for not filing the transcript, as distinguished from the statement of facts, within the sixty days provided by the Texas Rules of Civil Procedure, rule 386. The motion or pleading

was taken along with the case, to be passed on before the case on its merits.

 The motion was merely for dismissal of the appeal for want of jurisdiction. It was not a motion to vacate the previous orders of this court granting extensions of time within which to file the record here, nor was it a motion to strike the transcript and statement of facts. As the record stands, it reflects that this court has jurisdiction of the appeal, and the pleading which the appellees have filed was not deemed sufficient to require review of the court's orders granting the extensions of time, or the sufficiency of the applications or motions on which they were granted. For these reasons, the motion to dismiss was overruled, and the case disposed of on its merits.

No reversible error having been presented, the judgment of the trial court is affirmed.