Wilbur Lee **LEONHART** et al., Appellants,

v.

Mrs. Margaret L. **GILBREATH** et vir,
Appellees.

No. 13709.

Court of Civil Appeals of Texas.

Houston.

May 25, 1961.

Morris & Oldham, Tom Lorance, Houston, for appellants.

Miller, McClure & Lucas, James H. Wright, Houston, for appellees.

WERLEIN, Justice.

Appellees, Mrs. Margaret L. Gilbreath and husband, sued appellants to recover damages for personal injuries sustained by Mrs. Gilbreath on May 17, 1958 as a result of a collision between the Gilbreath car and a truck-trailer driven by appellant, Wilbur Lee Leonhart, and owned by appellant, Archie Lacy. The case was tried before the court without a jury. From the court's judgment awarding appellees $24,-500, appellants have perfected their appeal.

Appellants complain that the judgment of the court is grossly excessive and that the trial court erred in assuming appellants

were protected by liability insurance. At the request of appellants, the trial court set forth with particularity the amount of damages found for each of the elements of damage taken into account. Included in the total amount is $2,000 reasonable medical expenses, the parties having stipulated that medical and hospital bills aggregated such amount to date of trial. $10,000 was for physical pain and mental anguish of Mrs. Gilbreath from the date of injury to trial, and $7,500 for such physical pain and mental anguish as she would in reasonable probability suffer in the future. $3,000 was for her disability to perform her usual and customary duties, chores and services as a housewife and mother from date of injury to trial, and $2,000 for such disability in the future.

In considering appellants' assertion that the amount of damages found by the court is excessive, we think it proper to summarize briefly the evidence pertaining to Mrs. Gilbreath's physical condition and complaints, both before and after the accident in question.

The evidence shows that at the time the collision occurred, Mrs. Gilbreath's head struck the windshield of the car with sufficient force to break it; that she sustained a three inch cut on the top of her head, and was thrown or caused to fall out of the automobile into the ditch near the road, where she lay unable to get up. She suffered a badly bruised left knee, severely bruised right side, arm and right breast, contusions and lacerations of the scalp, bruises and abrasions on her face, a contusion of the left clavicle, left upper arm, and a lumbosacral strain. She was taken to Heights Hospital in an ambulance.

There is evidence that Mrs. Gilbreath, who was 36 years of age at the time of the collision, had had some back trouble, headaches and nervous tension at times prior to the accident. Her family doctor testified that she had some back trouble and was down in the back in 1954, but recovered from that difficulty in a short time. She

also had several episodes with her back since her last child was born. There is evidence that she had a narrowing of the fifth lumbar interspace and a degenerative disk, but there is no evidence of any prior injury to her back. Dr. Milligan, an orthopedic surgeon, testified that one could have a degenerative disk without any disability. His diagnosis was that Mrs. Gilbreath had a lumbosacral strain superimposed upon an old degenerative disk, and that was just like saying that a back sprain is superimposed upon an old arthritis.

Appellees' physician, Dr. Shoemaker, testified that Mrs. Gilbreath was in pretty fair health prior to the accident and that she did not see him any more than the average patient would, and then only for minor women's complaints and that sort of thing. The evidence shows that prior to the collision Mrs. Gilbreath not only performed all of her household duties, but that she also mowed her lawn, played on the church volley ball team during the 1957–1958 season, and enjoyed playing with her children, working in the yard and flower beds, and that there was nothing that prevented her from engaging in any sort of physical activity.

The record is replete with evidence of the severe physical pain and mental anguish which Mrs. Gilbreath has suffered ever since the accident. The pain in her back became worse and so severe and persistent that her family doctor referred her to Dr. Milligan, who found marked limitation of motion in all directions because of pain in the low back and muscle spasm. She was sent to St. Joseph's Hospital for a myelogram. After consultation with Dr. Skogland, Dr. Milligan performed exploratory and decompression operations and then a spinal fusion operation, using a bone cut from the back part of her pelvic bone in fusing the fifth lumbar vertebra to the first sacral vertebra. The operations were extremely painful. Mrs. Gilbreath has suffered more or less continuously ever since from the place in her pelvic bone from

which the bone for the graft was removed, and also from muscle spasms in her back and cramps in her legs.

Following the injuries she suffered severe headaches which gradually grew worse and became so severe that they caused her to become sick and vomit. The severe headaches and vomiting have sometimes occurred as often as twice a week and have been recurrent since the accident down to the date of trial. Mrs. Gilbreath testified that her severe headaches and extreme pain in her low back and leg cramping have remained about the same. She never had such headaches before the accident. She is never free from pain and is still under the care and treatment of her family doctor, who testified that the accident is apparently affecting her general health and that she will continue to have considerable difficulty for a good while; that prior to the accident she had not come to his office for headaches but since the accident she has been at his office numerous times; that she has sometimes vomited for 12 to 14 hours before coming to the office and that the injuries she sustained were a causation factor. There is testimony that since her injuries she has worn a brace or surgical corset and has not been able to perform her usual activities and household duties or even pick up things or move anything heavy or sweep with a broom, or do yard work or participate in activities and sports with her children or play on the church volley ball team; that Mr. Gilbreath has had to do most of the housekeeping, and that for fifteen weeks his aunt came to help out.

■ There is nothing in the record to show bias or prejudice or other improper motive on the part of the judge who tried the case that would warrant disturbing his judgment. The evidence as a whole shows that appellee, Mrs. Gilbreath, sustained severe and painful injuries, which will trouble her in the future indefinitely, and that she has been and is incapacitated from performing most of her household duties and

that she has suffered severe pain ever since the accident almost continuously and will continue to suffer for an indefinite period in the future.

We do not consider the amount awarded by the court excessive or in any way disproportionate to the injuries sustained by said appellee. It will be noted that the major portion of the amount decreed by the court is for physical pain and mental anguish which Mrs. Gilbreath has suffered and will continue to suffer in the future indefinitely.

In Port Terminal Railroad Association v. Noland, Tex.Civ.App., 288 S.W.2d 276, 282, ref., n. r. e., this Court stated:

"Any undertaking on the part of a reviewing court to evaluate another individual's pain and suffering in dollars and cents is manifestly a most difficult task. There is almost no yardstick which may be employed which will remove the decision from the realm of pure subjective thinking. The only objective approach to the problem of which this Court is aware is that of comparing the award made with those which have been approved by other courts in comparable litigation."

In making such comparison, we have concluded that the amount awarded by the court is not excessive in any way, and that it is amply supported by the evidence. See also City of Houston v. Cambeilh, Tex.Civ. App., 333 S.W.2d 192, writ ref., n. r. e.; Texarkana Bus Company v. Carter, Tex. Civ.App., 301 S.W.2d 300, writ ref., n. r. e.; Green v. Rudsenske, Tex.Civ.App., 320 S.W.2d 228; Jenkins v. Hennigan, Tex. Civ.App., 298 S.W.2d 905, writ ref., n. r. e.; Missouri Pacific Railroad Co. v. Ramirez, Tex.Civ.App., 326 S.W.2d 50, writ ref., n. r. e.; Missouri Pacific R. R. Co. v. Rhoden, Tex.Civ.App., 310 S.W.2d 607; Hernandez v. Baucum, Tex.Civ.App., 344 S.W.2d 498.

In Evans v. Rush, Tex.Civ.App., 254 S.W.2d 799, 802, the court stated:

"This being a non-jury case the trial judge was the trier of facts under rules previously herein stated and considerable latitude is vested in him in determining the amount of damages to be awarded in a personal injury action such as this. The damages in a case of this character cannot be measured by a mathematical yardstick. The courts will take judicial knowledge also of the diminishing purchasing power of the dollar in considering the charge of excessive damages awarded in a personal injury action such as this."

To like effect see Pruett v. Mabry, Tex. Civ.App., 268 S.W.2d 532, 538, writ ref., n. r. e., where the court stated:

" * * * we are not prepared to say that on the evidence the award of $5,000 because of her injuries is clearly excessive, or that the learned trial judge abused his discretion in awarding that amount. There are no fixed rules by which a just and fair compensation for pain and suffering can be ascertained. The matter must of necessity rest largely in the sound discretion of those whose primary duty it is to assess the damages, and unless the damages awarded are so clearly excessive as to show an abuse of that discretion or as to indicate passion, prejudice, corruption, or a disregard of the evidence, the trial court's award is binding on the appellate court."

■ There is no merit in appellants' assertion that the trial court erred in assuming that appellants were protected by liability insurance and in indicating his belief that any damages he might assess would be borne by a liability insurance company. The evidence shows that when counsel for appellants asked Mrs. Gilbreath concerning Dr. Skogland's examination of her at the request of All State Insurance Company (appellees' medical payments carrier), counsel for appellees objected. When the same line of cross-examination was again pursued, and counsel for appel-

lees again objected, the court stated: "I don't care whether they have insurance or not; it doesn't make a bit of difference in the world to me." Moreover, at that point counsel for appellants made the following statement:

"Your Honor, we want to make it known that the plaintiffs' car was covered by medical insurance, that All State covered that, as I understand it, up to $2,000.00 medical. The defendants' car was insured by the company that we represent. But that is not a matter for the Court to consider and, of course, the Court will not consider it, I feel sure."

The only references to insurance in the record are those made by counsel for appellants. They are hardly in a position to complain. In any event, it is evident that the court was in no way influenced by mention of insurance.

Judgment of the Trial Court is affirmed.